IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENDRICK VAUGHN, on behalf of himself and all others similarly situated<br><br>Plaintiffs,<br>v.<br><br>Vision Signs & Graphics, Inc.,<br><br>Defendant. | CLASS ACTION COMPLAINT<br><br>Case No. 1:26-cv-12270 |

**COMPLAINT**

1) Plaintiff, KENDRICK VAUGHN (hereinafter "Vaughn"), brings this action on behalf of himself and all other persons similarly situated (hereinafter "Class Members") against Vision Signs & Graphics, Inc. (hereinafter "Defendant"), and states as follows:

2) Vaughn is a visually-impaired and legally blind person who requires screen-reading software to access website content using his computer. Vaughn uses the terms "blind" or "visually-impaired" to refer to individuals who meet the legal definition of blindness, including individuals whose best-corrected central visual acuity is 20/200 or less in the better eye or whose visual field in the better eye is limited to 20 degrees or less. Some individuals who meet this definition have limited vision; others have no vision.

3) According to the U.S. Census Bureau's 2024 American Community Survey, as summarized by the American Foundation for the Blind, approximately 9 million people in the United States, including approximately 285,000 individuals living in the State of Illinois, are visually impaired.

4) Vaughn brings this civil rights action against Defendant for its failure to design, construct, maintain, and operate its Website https://mightyskins.com/ (hereinafter "Website" or "the Website") to be fully accessible to and independently usable by Vaughn and other blind or visually-impaired individuals. Defendant is denying blind and visually impaired individuals throughout the United States equal access to the goods and services Defendant provides to its non-disabled customers through the Website. Defendant's denial of full and equal access to its Website, and therefore denial of its products and services offered, is a violation of Vaughn's rights under the Americans with Disabilities Act (the "ADA").

5) The Website provides to the public a wide array of the goods, services, price specials and other programs offered by Defendant. Yet, the Website contains significant access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the Website. In fact, the access barriers make it impossible for blind and visually-impaired users to even complete a transaction on the Website. Thus, Defendant excludes the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. With technological advances in recent years, assistive computer technologies now play an essential role in enabling blind and visually impaired individuals to access digital content, allowing blind and visually-impaired individuals to fully and independently access a variety of services.

6) Blind and visually impaired individuals often rely more heavily on online platforms due to mobility-related barriers. The lack of an accessible website means that visually impaired individuals are excluded from fully experiencing and transacting on the Website and from purchasing goods or services from the Website.

7) Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendant has chosen to rely on an exclusively visual interface that provides no meaningful accommodations for screen-reader users. Defendant's sighted customers can independently browse, select, and buy online without the assistance of others. However, visually impaired individuals must rely on sighted companions to assist them in accessing and purchasing on the Website.

8) By failing to make the Website accessible to visually impaired individuals, Defendant is violating basic equal access requirements under both state and federal law.

9) Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired individuals.

10) Vaughn has visited the Website on or about June 26, 2026, and most recently on or about September 15, 2026, with the specific intent to purchase a tablet protective cover on the Website. However, the access barriers described herein continuously prevented Vaughn from completing that purchase independently. Vaughn suffered, and continues to suffer, frustration, humiliation, and discrimination as a direct result of Defendant's failure to provide a Website that is fully accessible to, and independently usable by, blind and visually-impaired individuals, in violation of his rights under the ADA.

11) Vaughn is currently, and has been continuously, deterred from returning to the Website by his actual knowledge that the barriers he personally encountered on or about June 26,

2026, and most recently on or about September 15, 2026, remain unremedied. This ongoing deterrence is itself an injury-in-fact independent of any future visit, because Vaughn cannot know whether the Website has become accessible without either attempting to use it again, which he reasonably will not do given his past experiences, or obtaining assurance through this litigation that the barriers have been cured. Notwithstanding this deterrence, Vaughn intends to and will attempt to purchase a cover for an electronic device from the Website again within thirty (30) days and periodically thereafter, once Defendant remedies the access barriers described herein. This concrete and particularized injury – both from Vaughn's past inability to complete a purchase and his ongoing deterrence from returning – is actual, imminent, and redressable by the injunctive relief sought herein.

12) Because Defendant's Website is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Vaughn seeks a permanent injunction to cause a change in Defendant's policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

13) This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because Vaughn's claims arise under the laws of the United States, specifically Title III of the ADA, and 42 U.S.C. § 12181 et seq., as Vaughn's claims are brought pursuant to 42 U.S.C. § 12182 and are enforceable through the remedies, procedures, and rights set forth in 42 U.S.C. § 12188.

14) The Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of conducting business in Illinois and has sufficient minimum contacts with this State to satisfy due process and the Illinois long-arm statute, 735 ILCS

5/2-209(a)(1), (c). Defendant, registered to do business in Illinois, operates a publicly available interactive commercial Website through which it markets, sells, and ships its protective covers for electronic devices and related products to consumers throughout the United States, including to consumers located in Illinois and in this District, on a continuous and systematic basis as part of its ordinary retail operations. Defendant's Website offers a wide selection of customizable protective skins and vinyl decals for electronic devices in a variety of styles, patterns, and designs. In addition, Defendant employs cookies, analytics, and other tracking technologies on its Website to collect information concerning Website visitors, including information used for advertising, marketing, and consumer engagement, thereby facilitating and supporting Defendant's commercial activities directed toward consumers, including consumers located in Illinois and within this District.

15) Vaughn's claims arise directly out of Defendant's Illinois-directed conduct: Vaughn, an Illinois resident, attempted to purchase Defendant's products from Illinois through the Website, and was denied full and equal access as a direct result of the barriers described herein. The exercise of jurisdiction over Defendant comports with traditional notions of fair play and substantial justice, as Defendant has continuously and deliberately targeted Illinois consumers as part of its ordinary course of business.

16) Venue is proper in this District under 28 U.S.C. §1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District because Vaughn attempted to use the subject Website within this Judicial District.

17) Defendant, who is registered to do business in Illinois, regularly conducts business in the State of Illinois, including in this District. Defendant has committed, and continues to

commit, the acts or omissions alleged herein in the Northern District of Illinois causing injury and violated rights the ADA prescribes to Vaughn and to other blind and other visually impaired consumers. A substantial part of the acts and omissions giving rise to Vaughn's claims occurred in this District: on separate occasions, Vaughn has been denied the full use and enjoyment of the facilities, goods and services offered to the general public, on Defendant's Website in Cook County. These access barriers that Vaughn encountered have caused a denial of Vaughn's full and equal access in the past and now deter Vaughn on a regular basis from accessing the Defendant's Website in the future.

18) The United States Department of Justice Civil Rights Division has recently provided "Guidance on Web Accessibility and the ADA." It states in part, "the Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."

19) This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

20) This lawsuit is aimed at providing visually impaired users like Vaughn a full and equal experience.

**THE PARTIES**

21) Vaughn is and has been at all relevant times a resident of Cook County, State of Illinois.

22) Vaughn is legally visually impaired and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq. Vaughn cannot use a computer without the assistance of screen reader software.

Vaughn has been denied the full enjoyment of the facilities, goods and services of the Website as a result of access barriers on the Website.

23) Defendant, a Florida Corporation, does business in this State with its principal place of business located at 3680 Investment Lane, Suite 1, West Palm Beach, FL 33404, being represented by its agent, David Hyman, located at 735 Charlestown Cir, Palm Beach Gardens, FL 33410.

24) Defendant provides to the public the Website, which provides consumers access to an array of goods and services, including the ability to purchase a wide selection of customizable protective skins and vinyl decals for electronic devices in a variety of styles, patterns, and designs. Consumers across the United States use Defendant's Website to purchase covers for electronic devices. Defendant's Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7), as it is a sales establishment operated by Defendant that offers goods and services to the public in the ordinary course of Defendant's retail business, regardless of whether that business is conducted through a physical storefront. The inaccessibility of the Website has deterred, and continues to deter, Vaughn from making an online purchase of a tablet protective cover.

## NATURE OF THE CASE

25) The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

26) Visually impaired individuals access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a visually impaired person whose residual vision is still sufficient to use magnification, screen

access software provides the only method by which a visually impaired person can independently access the Internet. Unless websites are designed to allow for use in this manner, visually impaired individuals cannot fully access the information, products and services offered online.

27) For screen-reading software to function properly, website content must be capable of being rendered accurately into text. If the website content is not capable of being rendered into text, the visually impaired user is unable to access the same content available to sighted users.

28) Visually impaired users of Windows-enabled computers and devices have several screen-reading software programs available to them. Job Access With Speech, otherwise known as "JAWS," is currently one of the most popular and downloaded screen-reading software programs.

29) The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.2 of the Web Content Accessibility Guidelines ("WCAG 2.2"). WCAG 2.2 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are followed by most large business entities and government agencies to ensure their websites are accessible. Many courts have also established WCAG 2.2 as the standard guideline for accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including, but not limited to: adding alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that visually impaired persons can easily navigate the site. Without these very basic components, a website will be inaccessible

to a visually impaired individual using a screen reader. Furthermore, websites must be accessible to users of all proficiency levels, including screen-reader users with minimal technical experience of screen-reading software and need to be able to work with all browsers. Finally, websites need to be continually updated and maintained to ensure that they remain fully accessible.

## FACTUAL ALLEGATIONS

30) Defendant controls and operates the Website in the State of Illinois and throughout the United States.

31) The Website is a commercial platform through which consumers can browse and purchase products and services for online sale. The online store allows the user to view covers for electronic devices, make purchases, and perform a variety of other functions.

32) Among the features offered by the Website are the following:

a) Consumers may use the Website to connect with Defendant on various social media platforms, including Facebook, Instagram, Pinterest, YouTube, and Twitter (X);

b) An online store that allows customers to purchase a wide selection of customizable protective skins and vinyl decals for electronic devices in a variety of styles, patterns, and designs for delivery to their doorsteps; and

c) Learning about shipping and return policies, reading customer reviews, and learning about the privacy policy, amongst other features.

33) This case concerns Defendant's policy and practice of denying visually impaired individuals' access to the goods and services offered by the Website. Due to Defendant's failure and refusal to remove access barriers to the Website, visually impaired individuals have been and

are being denied equal access to Defendant as well as to the numerous goods, services and benefits offered to the public through the Website.

34) Defendant denies the visually impaired users' access to goods, services and information made available through the Website by preventing them from freely navigating the Website.

35) The Website contains access barriers that prevent free and full use by Vaughn and visually impaired individuals using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: inaccessible drop-down menus, the denial of keyboard access for some interactive elements, failure to announce the roles and states of interactive elements, and changing of content without advance warning.

36) Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on the Website that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a visually impaired computer user). As a result, Vaughn and visually impaired individuals are unable to determine what is on the Website, browse the Website or investigate and/or make purchases.

37) When visiting the Website on or about June 26, 2026, and more recently on or about September 15, 2026, using JAWS screen-reader, Vaughn encountered accessibility barriers that denied his full and equal access to the Website and prevented him from completing his intended purchase. The barriers described are not isolated or transient defects but are structural features of

the Website's design and coding that affect core functions of the Website – including navigation, product feature selection, and confirmation messages – and render the Website inaccessible to, and not independently usable by, blind and visually-impaired persons who use screen-reader software, including Plaintiff and the members of the putative class he seeks to represent.

a) Images on the Website do not have alternative text. Blind users do not receive any description of the non-text content;

b) Labels of interactive elements do not provide sufficient context to identify their purpose. As a result, blind users cannot clearly determine the function or destination of the interactive elements;

c) Interactive elements are not keyboard focusable. The Website has functionality that is dependent on the specific devices, such as a mouse, and is not available to the assistive technology users;

d) Drop-down navigation menus are not fully operable using the keyboard. As a result, blind users cannot access all navigation options because some functionality depends on mouse interaction;

e) Blind users are unable to activate several interactive elements using "enter" or "spacebar" keys. The only mechanism for viewing items is the mouse;

f) The link text and alternative text of the image convey similar information and lead to the same destination. As a result, blind users must navigate through redundant links, making keyboard and screen reader navigation less efficient;

g) Links do not indicate when they open new windows or tabs, making unexpected changes in context difficult for blind users to anticipate and creating disorientation;

h) Interactive elements do not expose their role programmatically. As a result, screen reader software cannot announce the type of the interactive elements, making it difficult for blind users to identify their purpose and interact with them correctly;

i) Interactive elements do not expose their current state programmatically. As a result, screen reader software does not announce whether the elements are selected, expanded, checked, or otherwise activated, making it difficult for blind users to determine their current status;

j) When the "Add to Cart" button is activated and the dialog window opens, a status message incorrectly indicates that the cart is empty, although an item is already present in the cart. As a result, blind users may be unsure whether the product has been successfully added to the cart;

k) The Navigation menu contains elements within drop-down menus, and they do not announce their state - "collapsed" or "expanded". As a result, assistive technology users do not know if they skipped sub-menu links.

38) Consequently, visually impaired customers are essentially prevented from purchasing any items on the Website.

39) The Website cannot be used to complete a transaction by keyboard alone. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Vaughn and visually impaired people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Vaughn and visually impaired users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, the Website's inaccessible design, which cannot be operated by keyboard alone to complete a transaction, denies Vaughn and visually impaired customers the ability to independently navigate and/or make purchases on the Website.

40) Due to the Website's inaccessibility, Vaughn and visually impaired individuals must in turn spend time, energy, and/or money to make their purchases at traditional brick-and-mortar retailers. Some visually impaired customers may require a driver to get to the stores or require assistance in navigating the stores. By contrast, if the Website were accessible, a visually impaired individual could independently investigate products and make purchases via the Internet as sighted individuals can and do. According to WCAG 2.2 Guideline 4.1.2 'Name, Role, Value', all user interface components require a programmatically determinable name and value. The accessible name of interactive elements (buttons, check boxes, radio buttons, etc.) enables compatibility with assistive technology, such as screen readers, screen magnifiers, and speech recognition software, used by people with disabilities. In case the accessible name and value are not provided, users will not be able to identify the purpose of the form control and the state they are currently in. Thus, Defendant's inaccessible design deprives Vaughn and visually impaired customers of the opportunity to make purchases on the Website on their own.

41) The Website thus contains access barriers that deny full and equal access to Vaughn, who would otherwise use the Website and who would otherwise be able to fully and equally enjoy the benefits and services of the Website in Illinois State and throughout the United States.

42) Vaughn has made an attempt to complete a purchase on the Website. On or about June 26, 2026, and again on or about September 15, 2026, while trying to purchase a tablet protective cover, he visited Defendant's Website, Mightyskins.com. He was particularly interested in the Tablet Skins category and attempted to purchase a protective cover for his iPad. Vaughn was drawn to Defendant's products because the Website offered a wide variety of electronic device skins in different styles, patterns, and designs. During his visit, Vaughn explored the Apple Magic Keyboard Skins category and attempted to purchase the Stitch Dragons Magic Keyboard for iPad

Pro wrap. He was particularly interested in this product because of its artistic design and his familiarity with the artist's work, as well as his desire to personalize equipment that he uses for assistive technology training, education, professional development, and everyday activities. However, Vaughn encountered multiple accessibility barriers that prevented him from completing his intended purchase. Specifically, the navigation menu contained sub-menu elements that were not keyboard accessible, and the drop-down menus did not announce their expanded or collapsed state. As a result, Vaughn could not access the sub-menu items or determine whether additional links were available, limiting his ability to locate relevant purchasing options. Moreover, the controls used to expand additional product categories could not be focused using the Tab key, and no helpful instructions were provided on how to access them using other keyboard commands. As a result, Vaughn could not discover or activate these controls, making it more difficult for him to browse product categories efficiently. Additionally, after Vaughn added the selected product to his cart, the cart status message incorrectly announced that the cart was empty and contained zero items, even though the product had been successfully added. This inaccurate announcement caused confusion and led Vaughn to believe that his action had failed. As a result of these accessibility issues, Vaughn was unable to complete his purchase. These access barriers render the Website inaccessible to, and not independently usable by, blind and visually impaired individuals.

43) Vaughn intended to purchase Defendant's Stitch Dragons Magic Keyboard for iPad Pro because he was particularly interested in its artistic design and wanted to use it to personalize equipment that plays an important role in his education, assistive technology training, professional development, and everyday activities. Vaughn had recently received an iPad through an assistive technology training program in the Chicago area and uses his iPad, iPhone, and Windows laptop to develop the technical skills necessary to pursue employment in a variety of

professional fields. Vaughn's interest in Defendant's product was therefore based on the particular Stitch Dragons design, his familiarity with the artist's work, and his desire to personalize the equipment he uses regularly. Vaughn preferred this particular product over an unrelated keyboard wrap or skin from other sellers because he was specifically interested in its artwork and wanted to purchase that particular design for his iPad equipment. During his visits to Defendant's Website, Vaughn encountered accessibility barriers that prevented him from independently completing the purchase of the Stitch Dragons Magic Keyboard for iPad Pro wrap he wanted. Despite the accessibility errors, he remains interested in purchasing the Stitch Dragons Magic Keyboard for iPad Pro wrap from Defendant. Vaughn has not returned to the Website since September 15, 2026, and has no reason to believe that the Website has been fixed. He still wants to purchase the same product for his iPad Pro on the Defendant's Website. If the Website were made accessible, Vaughn would return to Defendant's Website and try to complete the purchase. Vaughn's intent to purchase from Defendant is not contingent or speculative: he intends to return to the Website and complete his purchase of Defendant's Stitch Dragons Magic Keyboard for iPad Pro wrap within thirty (30) days of Defendant's remediation of the access barriers described herein, and to return periodically thereafter to explore Defendant's available products and accessories. Vaughn is not using this litigation merely as a vehicle to challenge inaccessible websites in the abstract; he has an actual, product-specific interest in purchasing Defendant's Stitch Dragons Magic Keyboard for iPad Pro wrap because he believes Defendant offers better options and prices.

44) The discriminatory treatment Vaughn experienced is reasonably likely to continue absent judicial intervention. Despite the passage of time since Vaughn's visits, Defendant has not represented to Vaughn, to the Court, or to the public that it has remediated, or intends to remediate, the access barriers described herein. Defendant's Website continues to lack a remediation timeline,

or other indication that Defendant has taken steps to bring the Website into compliance with the ADA. Absent an order from this Court, Vaughn has no assurance that the barriers he personally encountered will not recur or persist indefinitely.

45) Vaughn has articulated a genuine, product-specific interest in Defendant's Stitch Dragons Magic Keyboard for iPad Pro wrap, rooted in his interest in its particular artistic design, familiarity with the artist's work, and desire to personalize equipment he uses for education, assistive technology training, professional development, and everyday activities, independent of and predating this litigation, as described above.

46) As described above, Vaughn has actual knowledge of the fact that Defendant's Website contains access barriers that render the Website inaccessible to, and not independently usable by, visually impaired individuals.

47) These barriers to access have denied Vaughn full and equal access to, and enjoyment of, the goods, benefits and services of the Website.

48) Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a) constructed and maintained a website that is inaccessible to visually impaired Class Members with knowledge of the discrimination; and/or

b) constructed and maintained a website that, despite being sufficiently intuitive for sighted users, is inaccessible to visually impaired Class Members; and/or

c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to visually impaired Class Members.

49) Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

50) Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of Mightyskins.com, Plaintiff and the class have suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of Defendant's conduct.

## CLASS ACTION ALLEGATIONS

51) Vaughn, on behalf of himself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access the Website and as a result have been denied access to the enjoyment of goods and services offered by the Website, during the relevant statutory period."

52) There are common questions of law and fact common to the class, including without limitation, the following:

(a) Whether the Website is a "public accommodation" under the ADA;

(b) Whether Defendant, through its Website, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to individuals with visual disabilities in violation of the ADA.

53) Vaughn's claims are typical of the Class. The Class, like Vaughn, is composed of severely visually impaired or otherwise blind individuals, and each may claim that Defendant has violated the ADA by failing to update or remove access barriers on its Website so either can be independently accessible to the Class.

54) Vaughn will fairly and adequately represent and protect the interests of the members of the Class because Vaughn has retained and is represented by counsel competent and experienced

in complex class action litigation, and because Vaughn has no interests antagonistic to the members of the class. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Vaughn and the Class as a whole.

55) Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class Members clearly predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

56) Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by individuals with visual disabilities throughout the United States.

## FIRST CAUSE OF ACTION

***Violation of the Americans with Disabilities Act ("ADA")***

57) Vaughn, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

58) Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12182(b)(2)(D)(i).

59) The Website is a place of public accommodation within the definition of 42 U.S.C. §§ 12181(7).

60) Defendant is subject to Title III of the ADA because it owns and operates the Website.

61) Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

62) Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

63) Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

64) In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

65) There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and focus order. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

66) The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 et seq., and the regulations promulgated thereunder. Patrons of Defendant who are visually impaired have been denied full and equal access to the Website, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

67) Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

68) As such, Defendant discriminates, and will continue in the future to discriminate, against Vaughn and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq. and/or its implementing regulations.

69) Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Vaughn and members of the proposed class and subclass will continue to suffer irreparable harm.

70) The actions of Defendant were and are in violation of the ADA, and therefore Vaughn invokes his statutory right to injunctive relief to remedy the discrimination.

71) Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Vaughn requests relief as set forth below.

**SECOND CAUSE OF ACTION**
***Declaratory Relief***

72) Vaughn, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

73) An actual controversy has arisen and now exists between the parties in that Vaughn contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying visually impaired customers the full and equal access to the products, services and facilities of its Website, which Defendant owns, operates and controls, and Defendant's Website fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.

74) A judicial declaration is necessary and appropriate so that the parties may understand their respective rights and obligations and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against the Defendant as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.;

b) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to bring the Website, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by visually impaired individuals, , including but not limited to conformance with WCAG 2.2 Level AA standard, and further requiring

Defendant to maintain such compliance on an ongoing basis, including respect to any future updates, changes, or modification to the Website;

c) An order requiring Defendant to submit to the Court and Plaintiff's counsel, within sixty (60) days of entry of judgment, and annually thereafter for a period of three (3) years, a written report detailing the specific steps taken to achieve and maintain ADA compliance, accompanied by an audit conducted by a qualified independent accessibility consultant;

d) A declaration that Defendant owns, maintains, and operates the Website in a manner that discriminates against the visually impaired and which fails to provide access for persons with disabilities as required by the Americans with Disabilities Act, 42 U.S.C. §§ 12182;

e) An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Vaughn as Class Representative, and his attorneys as Class Counsel;

f) Pre- and post-judgment interest;

g) An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 42 U.S.C. § 12205;

h) An order retaining jurisdiction over this matter for a period of no less than three (3) years following entry of final judgment to ensure Defendant's compliance with the injunctive relief ordered herein, and authorizing Plaintiff to seek enforcement of the Court's orders through contempt or such other remedies as may be available; and

i) Such other and further relief as this Court deems just and proper.

Dated: October 7, 2026

EQUAL ACCESS LAW GROUP, PLLC
*Attorneys for Plaintiff*
**/s/ Michael Ohrenberger**
By: Michael Ohrenberger, Esq.
4903 Avenue N,
Brooklyn, NY 11234
O: 844-731-3343
Email: MOhrenberger@ealg.law